

NUMBER 13-15-00236-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

IN THE INTEREST OF R.M., A.M., N.G., D.Q., AND V.Q.,
MINOR CHILDREN

On appeal from the 377th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Longoria**
**Memorandum Opinion by Justice Benavides**

In this parental rights termination case, appellant K.C. ("Mother") challenges the

trial court's order terminating her parental rights to R.M. ("Child R"), A.M. ("Child A"), N.G.

("Child N"), D.Q. ("Child D"), and V.Q. ("Child V").[1]  By five issues, which we treat as three,

Mother asserts that (1) the trial court did not acquire jurisdiction over Child N to terminate

---

[1] We will utilize aliases throughout this opinion in order to protect the identities of the minor children. TEX. R. APP. P. 9.8.

Mother's rights to her; (2) the trial court's findings supporting termination were not supported by the evidence; and (3) the Texas Department of Family and Protective Services ("the Department") did not comply with the family code when it removed Child N, Child D, and Child V from her custody. With regard to Mother's appeal, we affirm.

In a separate notice of appeal brought by Child R and Child A through their attorney ad litem, the minor children assert that the trial court unconstitutionally applied section 153.004(b) to their biological father, T.M. (Father T), when it appointed him possessory conservator of Child R and Child A with no rights or access. *See* TEX. FAM. CODE ANN. § 153.004(b) (West, Westlaw through 2015 R.S.). Because the Department agrees with and adopts Child R and Child A's argument on appeal, we reverse and remand with respect to this portion of the appeal.

## I.  BACKGROUND

Before delving into the facts of this case, we first identify all of the parties involved. Mother is the biological mother of Child R, Child A, Child N, Child D, and Child V.[2] Father T is the biological father of Child R and Child A, and is not a direct party to this appeal, but his interests are affected in this appeal by virtue of a brief filed on behalf of Child R and Child A's attorney ad litem.[3] Father M is Child N's biological father, and is not a party to this appeal. Father J is Child D and Child V's biological father and is not a party to this appeal. At the time the Department initiated these proceedings, Father J was Mother's boyfriend.

---

[2] The children are listed in order of age, from oldest to youngest. Two other children were born to Mother following the initiation of these proceedings but are not subject to this appeal.

[3] The attorney ad litem represented all five children in the proceedings below, but only Child R and Child A's interests are represented on appeal to this Court.

On June 9, 2013, the Department opened a case related to the interests of the five children that are the subject of this appeal, after the Department was alerted to allegations of sexual abuse committed against Child R and Child A, who were ages 10 and 8, respectively, at the time of trial. Both sisters made an outcry to Father T's wife, B.M. ("Stepmother") about sexual abuse committed against them by Father J. Upon learning of these allegations, Stepmother alerted the police. The Department subsequently filed a petition to terminate Mother, Father M, Father T, and Father J's respective parental rights over the five children. Additionally, the Department sought and obtained temporary sole managing conservatorship over all of the children involved in this case. All of the parents, including Father T and Stepmother, entered into various service plans with the Department that mandated various goals, tasks, and services that needed to be completed to the Department's satisfaction.

While the Department's petition was pending, Father T filed a counter petition to the Department's petition with respect to Child R and Child A's interests. In his counter petition, Father T noted that since the Department's intervention, Child R and Child A have been in his care, custody, and control. Further, Father T requested that he be named sole managing conservator of Child R and Child A.

Beginning December 9, 2014, the trial court commenced a bench trial on the Department's petition, as well as Father T's counter petition. The trial was reset to February 18, 2015 and included testimony from various witnesses, including: (1) the Department's caseworker; (2) two sexual assault nurse examiners (SANE) who evaluated Child R and Child A; (3) a psychologist who evaluated Child R, Child A, and Child N; (4)

3

a forensic interviewer who interviewed Child R following her outcry; and (4) a qualified professional counselor who counseled Child R and Child A.

Jennifer Mumphord and Leslie Kallus are both SANE nurses who testified at trial. Kallus examined Child R and concluded that injuries to Child R's hymen were consistent with sexual abuse. The trial court also admitted Kallus's notes from the SANE exam, which graphically detailed Child R's recounting of abuse that she, Child A, and Child N suffered by Father J. Mumphord's examination of Child A also indicated "deviations" in Child A's hymen. Testimony from psychologist Michelle Moran, forensic interviewer Maria Flores, and professional counselor Kimberly Stanfield all indicated that Father J sexually abused Child R and Child A. The trial court admitted evidence that Father J had been convicted prior to these proceedings of three counts of aggravated sexual assault related to these allegations, a first-degree felony, and was sentenced to three life sentences to run concurrently. *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2015 R.S.).

Department caseworker Elizabeth Lopez outlined all of the successes that Mother accomplished in her service plan, including completing drug and alcohol counseling, maintaining contact with the Department, and providing safe and hazard-free housing for herself and her children. Despite this progress, however, Lopez expressed concerns that Mother had not sufficiently demonstrated that she is protective of her children, that Mother was aware that Father J abused Child R and Child A and failed to act, and that she maintained contact with Father J following his arrest for aggravated sexual assault of a child stemming from the allegations in this case. Lopez further opined that terminating Mother's rights to all five children was in each child's best interest.

4

Mother testified in her defense and stated that despite assertions by the Department, she did not "see any signs" that Father J was sexually abusing Child R and Child A. Mother admitted to initially lying to the Department about her subsequent pregnancy, but testified that she did not tell the truth because she was worried that it would have adversely affected her rights to the five children at issue. Mother also admitted to visiting Father J while he was incarcerated on the pending aggravated sexual assault charges and that she also received various calls from him while he was confined. Shirley Richie, a licensed counselor, testified on Mother's behalf and noted progress in Mother's counseling sessions. Richie opined that she believed Mother had the necessary tools to protect her children and that she had no concern over Mother's ability to provide for the mental health and stability of her children.

The attorney ad litem for the children called two court-appointed special advocates (CASA) to offer their opinions regarding Mother's parental rights over her children. Melissa Machacek, the CASA volunteer who oversaw Child N, Child D, and Child V, stated that she had concerns regarding Mother's credibility and recommended termination of her rights. Carolyn Nelson, the CASA volunteer who oversaw Child R and Child A, echoed Machacek's testimony and also recommended termination of Mother's rights.

At the conclusion of the bench trial, the trial court found by clear and convincing evidence that termination of Mother's parental rights to all five children was in each child's best interest, and further found by clear and convincing evidence that Mother committed statutory violations under sections 161.001(D), (E), and (O) of the family code.[4] *See* TEX.

---

[4] The trial court also terminated Father M's and Father J's parental rights to their respective children. These orders are not before us on appeal.

5

FAM. CODE ANN. § 161.001(D), (E), and (O) (West, Westlaw through 2015 R.S.). The trial court denied Father T's counter petition, appointed Father T possessory conservator to Child R and Child A, and ordered that he have no rights or access to the children.[5] The Department was appointed sole managing conservator to all five children. This appeal followed.

## II. MOTHER'S APPEAL

### A. Jurisdiction over Child N

By her first issue, Mother asserts that the trial court never acquired jurisdiction over Child N to make the orders terminating Mother's rights to Child N valid.

#### 1. Applicable Law and Standard of Review

If a court of this state has acquired continuing, exclusive jurisdiction over a child, no other court of this state has jurisdiction of a suit with regard to that child except as provided by chapters 155 or 262, or section 103.001(b) of the family code. *See id.* § 155.001(c) (West, Westlaw through 2015 R.S.) ("Acquiring Continuing, Exclusive Jurisdiction in Suits Affecting Parent-Child Relationships").[6] If a transfer order has been signed by a court exercising jurisdiction under chapter 262, a party may file the transfer order with the clerk of the court of continuing, exclusive jurisdiction. *Id.* § 155.204(i) (West, Westlaw through 2015 R.S.). On receipt and without a hearing, the clerk of the court of continuing, exclusive jurisdiction shall transfer the files as provided by the statute. *Id.*

---

[5] We discuss this ruling in more detail later in the opinion.

[6] A suit filed by a governmental entity under chapter 262 is one that affects the parent-child relationship in which the governmental entity requests an order to take possession of a child without a court order. *See id.* § 262.001(a) (West, Westlaw through 2015 R.S.).

6

Subject-matter jurisdiction is essential to a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (internal quotations omitted). Such a question of jurisdiction may be reviewed for the first time on appeal. *Id.* Regardless of whether the parties question it, courts have an affirmative obligation to ascertain that subject matter jurisdiction exists. *Id.* (internal citations omitted). The determination of whether a court has subject matter jurisdiction over a case is a question of law we review de novo. *Id.*

### 2. Discussion

Our review of the record reveals clear facts concerning the trial court's jurisdiction over Child N in this matter. In the Department's original petition for protection, conservatorship, and termination in suit regarding all five children in this appeal, the Department's pleading states that it has jurisdiction over the suit pursuant to chapter 262 of the family code, and that it believed that "no other Court has continuing, exclusive jurisdiction over the children." In the trial court's final order of termination of parental rights, the trial court—without objection from the parties—expressly found that it had jurisdiction over all of the parties to this case and that no other court had continuing, exclusive jurisdiction over the case. Additionally, the trial court found that Father M was Child N's father.

However, Mother's and the Department's respective briefing on this issue muddy what we believe to be clear jurisdictional waters. Mother asserts in her brief that the Texas Attorney General's Office had filed a prior paternity action against Father M. Although Mother cites in her brief the trial court's cause number for this purported prior action concerning Child N, she does not provide this Court with any other reference or

7

evidence of such prior legal action. Further, Mother states that the trial court was "made aware of the fact that [it] did not have jurisdiction [over termination of parental rights as to Child N] because there had been previous proceedings in another court" and cites an exchange between the trial court and Mother's counsel where argument took place regarding a prior action from another court. While we agree that such an exchange took place, the substance of the exchange was not related in any way to a prior proceeding concerning Child N, but rather to a previous child support proceeding concerning Child R and Child A. The record in this case shows that a prior proceeding existed in the 267th District Court of Victoria County under trial court cause number 08-5-67297-C relating to Child R and Child A, but Father T's counsel moved to consolidate the previous action with the present termination action, and the trial court granted that motion. Additionally, the Department appears to agree with Mother's position and likewise cites to the exchange as proof of the prior proceeding concerning Child N, even though the exchange related to Child R and Child A and not to Child N. The Department also does not present any other evidence or references to the record concerning the trial court's jurisdiction over Child N.

As a result, our de novo review of the record shows the trial court had subject matter jurisdiction over Child N, and nothing in the record or briefing leads us to conclude otherwise. *See Rhule*, 417 S.W.3d at 442. Mother's first issue is overruled.

## B. Sufficiency Challenge

By her second, third, and fourth issues, which we treat as one, Mother challenges the sufficiency of the evidence regarding the trial court's findings by clear and convincing

evidence that she violated subsections (D), (E), and (O) of section 161.001(1) of the family code; and that termination of Mother's parental rights was in her children's best interests.

### 1.   Standard of Review

A court may order the termination of a parent-child relationship if it is shown by clear and convincing evidence that a parent has met at least one of the statutory factors listed in the family code, coupled with an additional finding by clear and convincing evidence that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2015 R.S.); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental termination and that one act or omission of conduct satisfies the first prong).

In reviewing the legal-sufficiency of a parental rights termination order, we examine all of the evidence to determine whether the evidence viewed in the light most favorable to the finding is such that the factfinder reasonably could have formed a firm belief or conviction about the truth of the matters as to which the Department bore the burden of proof. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We "must consider all of the evidence, not just that which favors the verdict." *Id.* We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotations omitted). "If [an appellate court] determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have

9

credited in favor of the finding is so significant that a fact[ ]finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

### 2.    Discussion

### a. Statutory Violations

The trial court made an explicit finding that Mother "knew of the sexual assault of Child R and Child A or should have known of the sexual assault but took no action to protect Child R, Child A, or Child N." In support of this finding, the record shows that Child R told forensic interviewer Maria Flores in detail about the sexual abuse she experienced by Father J, as well as the abuse Father J committed against Child A and Child N. Flores testified that Child R told Mother twice about the sexual abuse, but Mother "didn't do anything about it." Kimberly Stanfield, who professionally counseled Child R and Child A, also testified that Child R told Mother about the abuse, but Mother did not believe her, and on another occasion, Child R and Mother spoke about the abuse, but Mother never spoke to Father J or did anything to stop the repeated abuse. Stanfield further testified that Child A never told Mother directly about the abuse, but Child A knew that Child R had made an initial outcry to Mother about the abuse committed upon them by Father J. Although Mother denied that she knew of any abuse taking place against Child R or Child A by Father J, she nevertheless admitted to experiencing domestic abuse by Father J while they still lived together with the children. Finally, the trial court expressly found that Mother was "not a credible person."

10

In reviewing this evidence in a light most favorable to the trial court's order, we hold that the trial court could have reasonably formed a firm belief or conviction that Mother knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being, in violation of section 161.001(1)(D) of the family code. *See J.P.B.*, 180 S.W.3d at 573. Furthermore, in light of the entire record, we conclude that the evidence is factually sufficient to establish that Mother violated section 161.001(1)(D) of the family code. Because we conclude that the evidence is factually and legally sufficient to support the trial court's subsection (D) finding, we need not analyze the remaining findings related to this prong of the analysis. *See J.F.C.*, 96 S.W.3d at 261 (noting the two-prong test in deciding parental termination and that one act or omission of conduct satisfies the first prong).

**b. Best Interests of the Children**

The trial court also found by clear and convincing evidence that terminating Mother's parental rights was in all five children's best interests. *See id.* § 161.001(2). In reviewing a best interest finding, we consider, among other evidence, the non-exclusive *Holley* factors. *See In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). These factors include: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed

11

placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

Here, none of the children testified at trial, but the Department's caseworker, Elizabeth Lopez, testified that Child R and Child A told her that they would like to stay with Father T and not visit with Mother. Nancy Tryon, who has served as Child N, Child D, and Child V's foster mother, testified that none of the three children have "longings" to return to Mother and that they were in a comfortable and stable environment. Tryon testified that she was willing to adopt all three children, or foster them for as long as needed. Michelle Moran, a psychologist who evaluated Child R and Child A testified that Child R was "disappointed" and "hurt" that Mother failed to protect her and her sister from Father J's abuse. Additionally, Moran testified that Child A suffered from post-traumatic stress disorder due to the past sexual abuse. Based on her evaluation, Moran testified that it was in the best interest of the children to terminate Mother's rights. Furthermore, Stanfield, a qualified professional counselor, stated that Child R and Child A had demonstrated positive behaviors since attending counseling, and although she did not offer a recommendation regarding the children's best interests moving forward, Stanfield expressed concerns about whether Mother could protect her children. Melissa Machacek, the CASA volunteer who worked with Child N, Child D, and Child V, testified that based on her evaluation, she believed that Mother has chosen not to, or is unable to protect her children. Furthermore, Machacek testified that she does not believe Mother would change and questioned her honesty. Carolyn Nelson, the CASA volunteer who worked with Child R and Child A, recommended terminating Mother's rights and leaving the two children in the custody of Father T and Stepmother.

Mother's testimony was expressly found not credible by the trial court. However, the evidence showed that Mother substantially complied with the Department's service plan, including drug and alcohol assessment, psychological evaluation, maintaining contact with the Department, and individual counseling. Despite this progress, the Department's caseworker expressed concerns that Mother did not recognize symptoms of child abuse and continued to deny that the abuse took place, despite later admitting that she believed the girls. Mother testified that she lives with her mother and works at Church's Chicken restaurant making $8.25 per hour. Mother also testified that she was working on obtaining her general equivalency diploma. Mother admitted to concealing her subsequent pregnancy from the Department because she was worried about how it would affect her pending case. Additionally, the record shows that Mother visited Father J in jail sixteen times following his arrest for the aggravated sexual abuse charges and that she received telephone calls from Father J while he was imprisoned from May 2014 to July 2014. Mother's counselor, Shirley Richie, testified that she believed that Mother possessed the tools necessary to protect her children from abuse or neglect, but the trial court expressly stated that it did not find Richie's testimony credible.

In reviewing this evidence in a light most favorable to the trial court's order and with the *Holley* factors in mind, we hold that the trial court reasonably could have formed a firm belief or conviction that terminating Mother's parental rights was in all five children's best interests. Likewise, in light of the entire record weighed against the *Holley* factors, we conclude that the evidence is factually sufficient to establish that terminating Mother's parental rights was in the children's best interest.

13

### c. Summary

We conclude that the evidence is legally and factually sufficient to support the trial court's finding by clear and convincing evidence that Mother committed acts or omissions to satisfy 161.001(1)(D) of the family code and that terminating Mother's parental rights to Child R, Child A, Child N, Child D, and Child V are in each child's best interests. Mother's second, third, and fourth issues are overruled.

### C.     Department Compliance with the Texas Family Code

By her fifth and final issue, Mother asserts that the Department failed to comply with the provisions of the family code when it removed Child N, Child D, and Child V from Mother's care, and that had the Department conducted a proper investigation to ascertain the true facts, "the whole tenor of the trial would have been different."

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, and that the trial court ruled on or refused to rule on the request, objection, or motion expressly or implicitly. TEX. R. APP. P. 33.1(a). Here, nothing in the record indicates that Mother's complaint on appeal was made to the trial court and ruled upon. As a result, this issue is unpreserved for our review. *See id.* Mother's fifth issue is overruled.

### III.     CHILD R AND CHILD A'S APPEAL

At the conclusion of the proceedings below, the trial court made the following relevant finding in denying Father T's petition for sole managing conservatorship:

14

The thing that is troubling to me in this case is as follows: [Mother's] date of birth is April 21st, 1989. [Father T's] date of birth is March 24th, 1986. [Father T] was more than three years older than [Mother].

. . . .

Penal Code Section 22.011, subparagraph (a) (2), says that: 'A person commits an offense if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means.'

Subsection (B) (11) -- I'm sorry -- (A)(11) -- correction -- (C) (1) defines a child as 'a person younger than 17 years of age.' [Mother] at the time that she engaged in intercourse with [Father T] . . . was a child by definition.

[Father T], by definition, was more than three years older than [Mother], which means that [Father T] has committed sexual assault upon [Mother].

I'm advising the District Attorney of Victoria County, Texas, that it appears that [Father T] has committed a felony offense of sexual assault under the provisions of the Code. There is no period of limitations for this offense. Again, I will leave that issue to the sound judgment of the District Attorney of Victoria County, Texas.

I am troubled by the fact that the Department of Family and Protective Services has chosen to place children with a person who has committed sexual assault on a child.

I'm particularly disturbed by the Department's decision, particularly in light of Section 153.004 of the Texas Family Code, subparagraph(B), which says as follows: 'The Court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child, including sexual assault, in violation of Section 22.011 or Section 22.021 of the Penal Code, that results in the other parent becoming pregnant with the child.[']

That is exactly what happened in this case.

A history of sexual abuse includes a sexual assault that results in the other parent becoming pregnant with the child, regardless of the prior relationship with between the parents. So here we have the State of Texas, through the Department of Family and Protective Services, who is in the position of managing conservator of this -- these children, placing these children with a parent who, at least apparently, has committed sexual assault upon the other spouse resulting in the pregnant of the other person -- resulting in the pregnancy of that person in which the Family Code, at least on the initial

15

inquiry, would prohibit me; and therefore, I believe them from appointing a managing conservator.

Now, it goes on to say: 'the Court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that,' Subparagraph (2), 'the parent engaged in conduct that constitutes an offense under Section 21.02, 22.011" which I have just read, "or Section 22.021 or 25.02 of the Penal Code and that as a direct result of the conduct, the victim of the conduct became pregnant with the parent's child."

The—there is escape language in here that says that notwithstanding the prohibition that says that I cannot allow [Father T] to have access— remember, it just says 'access' to the child. It says that I can't allow him to have access . . . .

I can allow him to have access if I render a possession order that's designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement with that, and then it sets out some things that I can do. But it doesn't say—it doesn't say that I can or should appoint him a managing conservator and, in fact, it seems to me that Subparagraph B says that I may not appoint a joint managing conservator if credible evidence is presented, et cetera. There's credible evidence here that this child -- the oldest child, [Child R], was conceived as a result of a sexual assault by [Father T] upon [Mother].

As a result of this finding, the trial court denied Father T's petition for sole conservatorship over Child R and Child A and named him possessory conservator of Child R and Child A with no rights or access.

By their sole issue on appeal, Child R and Child A assert that the trial court unconstitutionally applied section 153.004(b) to Father T, depriving him of due course of law regarding his constitutionally-protected fundamental right to be Child R and Child A's father. *See* TEX. FAM. CODE ANN. § 153.004(b). Section 153.004 states the following in relevant part:

(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger

16

than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(b) . . . .

It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

. . . .

(d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that:

(1) there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit; or

(2) the parent engaged in conduct that constitutes an offense under Section 21.02, 22.011, 22.021, or 25.02, Penal Code, and that as a direct result of the conduct, the victim of the conduct became pregnant with the parent's child.

(d-1) Notwithstanding Subsection (d), the court may allow a parent to have access to a child if the court:

(1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child; and

(2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:

(A) the periods of access be continuously supervised by an entity or person chosen by the court;

(B) the exchange of possession of the child occur in a protective setting;

(C) the parent abstain from the consumption of alcohol or a controlled substance, as defined by Chapter 481, Health and Safety Code, within 12 hours prior to or during the period of access to the child; or

(D) the parent attend and complete a battering intervention and prevention program as provided by Article 42.141, Code of Criminal Procedure, or, if such a program is not available, complete a course of treatment under Section 153.010.

*Id.*

Here, the trial court appeared to make a finding that credible evidence existed that Father T committed physical or sexual abuse against Mother in violation of section 22.011 of the penal code, and as a result, the court found that Father T did not rebut the presumption that his appointment as sole managing conservator of Child R and Child A was not the children's best interests.

On appeal, Child R and Child A assert that the trial court unconstitutionally applied section 153.004(b) to Father T because he was not given proper due process in allowing him an opportunity to rebut the presumption that naming him sole managing conservator of Child R and Child A was not in their best interests, and in so doing, the trial court deprived Father T of his fundamental rights as a father to Child R and Child A. In its response brief, the Department agrees with and adopts Child R and Child A's arguments. Because the Department agrees with and adopts Child R and Child A's arguments on this issue, we sustain Child R and Child A's issue without addressing its merits.

## IV. CONCLUSION

We affirm the trial court's judgment terminating Mother's parental rights to Child R, Child A, Child N, Child D, and Child V. We reverse the portion of the trial court's judgment denying Father T's petition for sole managing conservatorship and granting the Department sole managing conservatorship to Child R and Child A.

We remand this case for the trial court to conduct a new hearing related to Father T's petition seeking sole managing conservatorship of Child R and Child A. At this

18

hearing, the trial court shall give all parties an opportunity to fully develop a record related to whether—and if so, how—section 153.004 of the family code affects Father T's petition seeking sole managing conservatorship of Child R and Child A. Finally, our holding does not affect the Department's status as temporary managing conservator of Child R and Child A that was in effect prior to the termination proceedings below.

GINA BENAVIDES,
Justice

Delivered and filed the
15th day of October, 2015.